**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

RICHARD A. WASHINGTON,      :
                              :
     Petitioner,               :
                              :
     v.                       :     No. 02-CV-7474
                              :
RAYMOND J. SOBINA, et al.,     :
                              :
     Respondent.            :
                              :

<u>**MEMORANDUM AND ORDER**</u>

**ANITA B. BRODY, J.**                                  **September 12,   2005**

Petitioner Richard A. Washington ("Washington") petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  I referred the petition to United States Magistrate Judge Diane M. Welsh for a Report and Recommendation ("R&R") in accordance with 28 U.S.C. § 636(b)(1)(B).  The R&R recommended that I grant the petition in part and deny the petition in part.  The parties filed objections.  For the reasons set forth below, I will overrule petitioner's and respondent's objections, adopt the R&R as supplemented by this Memorandum,[1] and grant in part and deny in part the petition for a writ of habeas corpus.

## I.  Background

Washington has already had three trials and is facing a fourth.  The first trial ended in a mistrial.  In the second trial, the jury convicted Washington on three counts of the indictment, acquitted him on several counts, and was unable to reach a verdict on the remaining counts of

---

[1] I have slightly modified the remedy recommended in the R&R.

1

murder and kidnaping.  Washington was sentenced on the counts for which he was convicted.

Washington's third trial resulted in a hung jury, and Washington currently awaits his fourth trial.

The R&R recited the factual and procedural background of Washington's case available

to the court at that time.[2]  I decided to hold an evidentiary hearing based on Washington's

objections and the absence of the complete state court record.[3]  In preparation for the hearing, the

government provided a complete copy of the Pennsylvania Superior Court Quarter Sessions File

along with other documents the government believed to be relevant.  In addition, I received

Washington's testimony at the evidentiary hearing, and, pursuant to the parties' agreement, I

received two affidavits, supplemental documentary evidence, and additional briefing from the

parties subsequent to the evidentiary hearing.[4]  I have developed the chronology below as a

helpful tool to examine the issues before me.


## A.  Time Preceding Washington's First Trial[5]

---

[2] At the time the R&R was written, the government had not produced the state court record, and the court relied upon the briefs of the parties and the records that the District Attorney for Philadelphia County provided the court.  (R&R at 1.)

[3] I will discuss my decision to hold an evidentiary hearing in more detail when I discuss Washington's objections.

[4] The government submitted Respondents' Post Hearing Brief with attachments and an affidavit of Assistant District Attorney Jude D. Conroy, Esq., the prosecutor involved in Washington's state criminal trials.  Washington submitted a Post Hearing Memorandum in Support of Petitioner's Motion Filed Pursuant to Title 28 United States Code Section 2254 with attachments including an affidavit of Charles P. Mirarchi, III, Esq., Washington's trial attorney for the state criminal proceedings.

[5] All state court proceedings are italicized; federal court proceedings are in ordinary Times New Roman font.

| | |
|---|---|
| *December 18, 1995* | *Washington was arrested in connection with the kidnaping of Asha Woodall and shooting of Anthony Carney on February 18, 1994 in Philadelphia County.* <u>Commonwealth v. Washington</u>, *No. 9603-0210, slip op. at 1-2 (Pa. Ct. C.P. Aug. 23, 2004) ("<u>Washington</u>, PCRA Opinion of 8/23/04").* |
| *April 8, 1996* | *The state trial court appointed Charles P. Mirarchi, III ("Mirarchi") as trial counsel for Washington.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 1 at 1.)* |
| *April 18, 1997* | *The state court received a <u>pro se</u> motion from Washington requesting dismissal or release from custody pursuant to Rule 1100(e), (g) of the Pennsylvania Rules of Criminal Procedure and "the Fifth and Fourteenth Amendment right against trial delay."  (Pa. Super. Ct. Quarter Sessions File Mot. 4/18/97.)* |
| *July 29, 1997* | *Washington's first trial began.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 1 at 4.)* |
| *August 6, 1997* | *A mistrial was declared.[6]  (<u>Id.</u>)* |

Of the continuances requested leading up to the first trial, only one two-day continuance is identified on the state court docket as a request by the prosecution.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 1 at 1-4.)  The R&R stated "the bulk of the continuances were sought by [Mirarchi].  The delay he caused . . . amounts to approximately eight months."  (R&R at 13.) Neither party objected to this finding and it is supported by the state court docket sheet.  (<u>See</u> Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 1.)  Washington has presented no evidence that the prosecution caused any delay deliberately to hamper the defense.

---

[6] A mistrial was declared because someone improperly contacted a juror.  <u>Washington</u>, PCRA Opinion of 8/23/04 at 3.  Washington's trial counsel, Mirarchi, requested a mistrial, Washington told the court that he would like to continue to a verdict, and the trial court declared a mistrial by reason of manifest necessity.  (Aff. Mirarchi ¶ 4; Tr. 5/20/05 at 39.)

**B.  Time Preceding Washington's Second Trial**

| | |
|---|---|
| *December 12, 1997* | *The state court released Washington on his own recognizance under Rule 1100.  (R&R at 15.)[7]* |
| *December 10, 1998* | *Washington's second trial began.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 1 at 5.)* |
| *December 22, 1998* | *The jury returned a verdict.  (Id.)  The jury convicted him of some charges, acquitted him of some charges, and was unable to reach a verdict as to some charges.[8]  (Pa. Super. Ct. Quarter Sessions File Verdict Report 12/22/98.)* |
| *February 16, 1999* | *Washington was sentenced to a term of incarceration of five to ten years on the three charges for which he was* |

---

[7] Both parties agree that Washington was released on his own recognizance ("ROR") between the first and second trials and that if Washington's five to ten year sentence were completed or vacated, Washington would be released from custody.  (Tr. 5/20/05 at 52.) Although the R&R mentions a sentence imposed on Washington by the court in Montgomery County for separate and unrelated charges, the parties agree that Washington is no longer serving the Montgomery County sentence.  (Id.)

[8]  The jury convicted Washington on one count of criminal conspiracy, one count of possession of an instrument of crime, and one count of robbery of a motor vehicle.  (Pa. Super. Ct. Quarter Sessions File Verdict Report 12/22/98.)

The jury acquitted Washington on one count of criminal conspiracy, and counts of making terroristic threats, robbery, and burglary.  (Id.)  The jury also acquitted Washington of one count of first degree murder.  Washington, PCRA Opinion of 8/23/04 at 3-4.  Initially, the jury verdict stated that the jury could not reach a verdict as to any of the murder charges.  (Pa. Super. Ct. Quarter Sessions File Verdict Report 12/22/98.)  After the trial, however, the jurors spoke with the attorneys and the jurors explained that they had all agreed that Washington was not guilty of first degree murder, but they were confused by the verdict sheet and thought they could not acquit him of first degree murder unless they agreed on a verdict for all degrees of murder.  Washington, PCRA Opinion of 8/23/04 at 4.  Washington filed a motion to dismiss the first-degree murder charge, and on June 29, 1999, the court granted Washington's motion to dismiss the first-degree murder charge on double jeopardy grounds.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 6.)  This decision corrected the verdict to reflect the obvious intention of the trier of fact.  Washington, PCRA Opinion of 8/23/04 at 5.

The jury was unable to reach a verdict on the lesser degrees of murder and the kidnaping count.  (Pa. Super. Ct. Quarter Sessions File Verdict Report 12/22/98.)

convicted.  <u>Id.</u> at 4.

In the first trial, a 911 tape was introduced into evidence, but that tape disappeared between the first and second trial, so a transcript of the tape was entered into evidence in Washington's second trial.  (Tr. 2/6/03 at 5.)[9]

Between the first and second trials, the prosecution requested at least one continuance because of difficulty locating a witness, and the defense requested at least one continuance because Mirarchi, trial counsel for Washington, had surgery.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 1 at 4.)  At least one continuance was attributable to the court.  (<u>Id.</u>)  The remainder of the delay is unexplained.  (R&R at 15.)  Again, Washington has presented no evidence that the prosecution caused any delay deliberately to hamper the defense.

**C.  Time Preceding Washington's Third Trial**

| | |
|---|---|
| *February 19, 1999* | *Washington filed a <u>pro se</u> post-sentence motion contesting his sentence without his attorney's knowledge.  (Resp't's Objections Ex. 2 & Ex. 7; <u>see also</u> Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 6.)* |
| *March 5, 1999* | *Washington filed a counseled notice of appeal from his judgment of sentence entered on February 16, 1999.  The notice of appeal was stamped "Received Accepted For Review Only Mar 5 1999 Criminal Appeals Unit First Judicial District of PA."  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 3; Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 3.)[10]* |
| *March 15, 1999* | *The trial judge ordered Washington to file a concise statement of matters complained of on appeal.  (R&R at 2;* |

---

[9] The prosecution made this assertion and the defense did not contest it.  (Tr. 2/6/03 at 5.)

[10] Mirarchi states in his affidavit that the appeal has never been dismissed and that the state court told Mirarchi "that an appeal on a partial verdict could not be prosecuted."  (Aff. Mirarchi ¶ 7.)

|  | *see also Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 5a.) The letter stated, "Upon receipt of your reply to this order, I will write my Opinion forthwith." (Pa. Super Ct. Quarter Sessions File Letter 3/15/99.)* |
|---|---|
| *April 26, 1999* | *The state court denied Washington's post-sentence motion contesting his sentence. (R&R at 2; see also Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 6.)* |
| *April 30, 1999* | *The state court issued a document titled "Order" that contained a brief procedural history of Washington's filings after his sentencing but included no other statements.[11]* |
| *November 8, 2001* | *Washington filed a "Petition for Writ of Habeas Corpus, and/or Motion to Dismiss Due Pa. Crim. P. Rule 600" in the Superior Court of Pennsylvania. In this petition he argued that he was being held contrary to the time limits proscribed by state law, and in the last paragraph Washington added, "which violates constitutional rights to speedy trial and due process." (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 5.)* |
| *January 30, 2002* | *The Superior Court denied the habeas petition[12] with the explanation that only the Supreme Court of Pennsylvania had jurisdiction to issue a writ on a lower court when no* |

---

[11] The order stated the following:

1. On 2/16/99, defendant was sentenced on the partial verdict of 12/22/98
2. On 3/5/99, Appeal to Pennsylvania Superior Court accepted for review only.
3. On 3/15/99, Order for a 1925(b) to be filed.
4. On 4/26/99, Letter received from the defendant pro-se to permit nunc pro tunc review of Reconsideration of Sentence.
5. On 4/27/99, Request for nunc pro tunc review denied.

(Pa. Super Ct. Quarter Sessions File Order 4/30/99.)

[12] The court did not address the motion to dismiss that was joined with the habeas petition until February 6, 2003, which was just prior to Washington's third trial.

6

|  | *appeal was pending.*[13]  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 7.) |
|---|---|
| February 19, 2002 | Washington filed a federal petition for a writ of habeas corpus alleging that his Sixth Amendment right to a speedy trial and his due process right to a speedy appeal had been denied.  (R&R at 3.) |
| *March 12, 2002* | *Washington filed another state petition for a writ of habeas corpus in the Supreme Court of Pennsylvania alleging the violation of his constitutional rights to a speedy trial, direct appeal and due process along with the violation of his state rights.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 6.)*[14] |
| *June 4, 2002* | *The Supreme Court of Pennsylvania dismissed Washington's state habeas petition.*[15] |
| June 19, 2002 | Because the parties did not inform me that the Supreme Court of Pennsylvania dismissed Washington's state habeas petition on June 4, 2002, I adopted the Report and Recommendation of the magistrate judge and dismissed Washington's federal petition for non-exhaustion.  (R&R at 3.) |
| *September 3, 2002* | *Washington wrote to three judges requesting that his retrial* |

---

[13]  The text of the order is as follows:

The pro se "Petition for writ of Habeas Corpus" is hereby denied.  See Municipal Publications v. Court of Common Pleas, 489 A.2d 1286 (Pa. 1985) (stating that the Supreme Court of Pennsylvania has original jurisdiction to issue a writ on the lower court where no appeal is pending.)

(Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 7.)

[14]  Washington's speedy trial argument concentrates on the state right to a speedy trial, but his introduction clearly states that he is seeking relief "from the unlawful detention resulting from the Commonwealth's intentional violation of petitioner's constitutional rights to Speedy Trial, Direct Appeal, and Due Process."  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 6 at 3.)

[15]  Though the parties did not provide documentary evidence of this fact, the June 4, 2002 denial of Washington's habeas petition before the Supreme Court of Pennsylvania is undisputed by the parties.  (R&R at 3-4.)

|  | be scheduled.  <u>Washington</u>, PCRA Opinion of 8/23/04 at 6. |
|---|---|
| *September 15, 2002* | *Washington wrote a letter to his trial counsel, Mirarchi, informing Mirarchi that Washington would be sending complaints to the state court, the Bar Association, and the Disciplinary Board due to Mirarchi's failure to move for dismissal based on Washington's right to a speedy trial or push for a timely retrial.  (Pa. Super. Ct. Quarter Sessions File Letter 9/15/02.)[16]* |
| September 25, 2002 | Washington filed the federal petition for a writ of habeas corpus that is currently before me.[17] |
| November 8, 2002 | I referred Washington's federal habeas petition to United States Magistrate Judge Diane M. Welsh for an R&R. |
| November 13, 2002 | I appointed counsel for Washington for the federal habeas proceeding. |
| *February 6, 2003* | *Following oral argument, the state trial judge denied Washington's motion to dismiss the pending criminal charges in state court pursuant to Pennsylvania Rule of Criminal Procedure 600,[18] which is a speedy trial provision.  (Tr. 2/6/03 at 19.)* |
| *February 10, 2003* | *Washington's third trial began for the remaining charges in the indictment.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 8.)* |
| *February 21, 2003* | *The trial judge declared a hung jury.  (<u>Id.</u>)* |

---

[16] Washington also testified that there were occasions when he spoke with and corresponded with Mirarchi and insisted upon having a trial.  (Tr. 5/20/05 at 36.)

[17] As discussed below, this petition alleges that Washington's Sixth Amendment right to a speedy trial and his due process right to a speedy appeal have been denied.

[18] This motion was filed on November 8, 2001 as a "Petition for Writ of Habeas Corpus, and/or Motion to Dismiss Due Pa. Crim. P. Rule 600," and the state court treated it as both a petition for habeas corpus and a motion to dismiss.  As mentioned above, the petition for habeas corpus was dismissed on January 30, 2002.

Between the second and third trials, Washington requested at least two continuances, which account for approximately four months of delay.  (R&R at 16; <u>see also</u> Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 7-8.)  There is no evidence that the prosecution requested any continuances.  (<u>Id.</u>)  The remainder of the delay appears to be attributable to the court.[19]  (<u>Id.</u>)  Washington has presented no evidence that the prosecution caused any delay deliberately to hamper the defense.

## D.  Time Preceding Washington's Upcoming Fourth Trial

| | |
|---|---|
| March 26, 2003 | The government filed a response to Washington's federal habeas petition. |
| *August 11, 2003* | *Washington filed a <u>pro se</u> Post Conviction Relief Act ("PCRA") petition in state court arguing that he was denied his right to appeal.  <u>Washington</u>, PCRA Opinion of 8/23/04 at 6-7.* |
| *October 10, 2003* | *The state court received a <u>pro se</u> letter from Washington to which he attached a motion entitled "Application for Leave to File Post-Sentence Motion Nunc Pro Tunc and Request for Nominal Bail Pending Appeal" asserting that his notice of appeal is still pending, and he has been denied his constitutional right to direct appeal among other rights. (Pa. Super. Ct. Quarter Sessions File Letter 10/10/03 Ex. 1 at 2.)* |
| October 16, 2003 | Washington filed a counseled amendment to his federal |

---

[19] On March 3, 2000, there was a continuance because the presiding judge, Judge Poserina, was hospitalized.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 2 at 7-8.)  On May 24, 2000, there was a continuance because the judge was not sitting, and on May 24, 2001, January 21, 2003, and January 28, 2003, the court was conducting trials for other matters.  (<u>Id.</u>)  Mirarchi knew that he could request reassignment to an available judge to avoid trial delays, but he chose to keep the case before Judge Poserina.  (Aff. Mirarchi ¶ 12.)

In addition, several of the entries on the docket sheet address Washington's post-trial motions, which may account for some of the delay.  (<u>Id.</u>)

|  | petition for writ of habeas corpus pursuant to the court's order. |
|---|---|
| January 27, 2004 | Washington filed a counseled memorandum of law in support of his federal habeas petition pursuant to the court's order. |
| March 4, 2004 | The government filed a response to Washington's memorandum of law in support of his federal habeas petition pursuant to the court's order. |
| April 6, 2004 | Judge Welsh issued the R&R for Washington's federal habeas petition. |
| April 26, 2004 | The government filed timely objections to the R&R in federal court. |
| *May 12, 2004* | *Washington filed an amended PCRA petition.[20]* *Washington, PCRA Opinion of 8/23/04 at 6.[21]* |
| June 3, 2004 | Washington filed objections to the R&R in federal court.[22] |
| June 7, 2004 | I granted Washington's motion to dismiss counsel. |
| *June 11, 2004* | *The Board of Probation and Parole issued the following decision after interviewing Washington and reviewing his file: "A DECISION IN YOUR CASE IS PENDING: DISPOSITION OF CRIMINAL CHARGES - PHILA MURDER, VUFA PENDING CHARGES."  (Notice of Board Decision 6/11/04.)* |

---

[20] The amended PCRA petition argued that Washington had been denied his rights to speedy trial, direct appeal, and due process.  (Am. Pet. Pursuant to PCRA at 5.)  However, the PCRA Opinion stated, "[t]he only legal issue presented by Defendant's instant PCRA petition is whether a defendant is entitled to appeal a partial verdict."  Washington, PCRA Opinion of 8/23/04 at 7.

[21] Subsequently on June 15, 2004, at Washington's request, the state court allowed him to proceed pro se with his PCRA claims.  Id.

[22] Washington filed these objections before receiving a copy of the R&R.  His supplemental objections, filed on July 14, 2004, are the objections I address in this memorandum.

| | |
|---|---|
| *June 22, 2004* | *The Pennsylvania Court of Common Pleas dismissed Washington's PCRA claims as untimely. <u>Washington</u>, PCRA Opinion of 8/23/04 at 6.* |
| *June 24, 2004* | *Washington requested a continuance in state court for two reasons: "(a) Mr. Washington was concerned about the recent publicity concerning his trial attorney's own legal troubles, and (b) Mr. Washington did not want to go forward until his federal habeas matter was completed."[23] (Aff. Conroy ¶ 8.)* |
| *July 6, 2004* | *Washington appealed the dismissal of his PCRA petition to the Pennsylvania Superior Court. <u>Washington</u>, PCRA Opinion of 8/23/04 at 6; (<u>see also</u> Resp't's Post Hr'g Br. Ex. D at 4.)* |
| July 14, 2004 | Washington filed supplemental objections to the R&R in federal court after the date specified in the R&R for timely objections, because he had not received the R&R by the date on which his objections were due.[24] |
| *August 23, 2004* | *The PCRA court issued an opinion explaining its dismissal of Washington's PCRA petition.[25] <u>Washington</u>, PCRA Opinion of 8/23/04.* |
| December 9, 2004 | Upon determining that an evidentiary hearing would be |

---

[23] Washington made this request through Mirarchi, and Washington also addressed the court himself.  (Aff. Conroy ¶¶ 8-9.)

[24] Section 636(b)(1) provides that parties may file objections within ten days of being served with a copy of the R&R.  Washington states in his supplemental objections that he had not received a copy of the R&R on June 3, 2004 when he wrote his objections.  (Pet'r's Supplemental Objection at 2.)  Therefore, I will consider Washington's supplemental objections rather than his objections.

[25] The PCRA court dismissed Washington's PCRA petition because Washington did not file his PCRA within a year of the date his judgment became final, and none of the exceptions to the timeliness requirement applied.  <u>Id.</u> at 8-9 (citing 42 Pa. Cons. Stat. § 9545(b)(1)).  As part of that determination, the court held that the state trial court acted appropriately in deciding to sentence Washington for some of the charges in his indictment while others were pending.  <u>Id.</u> This PCRA Opinion also included the statement that Washington's "appeal was ultimately withdrawn."  <u>Id.</u> at 5.

11

|                      | necessary to decide the issues in Washington's federal habeas petition, I appointed counsel for Washington so that he could prepare for the evidentiary hearing. |
|----------------------|---|
| December 16, 2004    | I issued an order scheduling an evidentiary hearing regarding Washington's federal habeas claims.[26] |
| January 18, 2005     | I presided over the first scheduled evidentiary hearing and determined, upon consultation with the parties, that another evidentiary hearing would be necessary.  The government requested permission to respond to Washington's supplemental objections to the R&R, and I granted permission. |
| January 24, 2005     | The government filed a response to Washington's supplemental objections. |
| *January 25, 2005*   | *The Board of Probation and Parole reaffirmed their decision of June 11, 2004 to postpone decision pending disposition of the remaining charges.[27]* |
| *February 17, 2005*  | *Washington wrote a letter to his trial attorney, Mirarchi, asking him to postpone the state trial scheduled for March 8, 2005.  (Resp't's Post Hr'g Brief Ex. C.)* |
| May 20, 2005         | I presided over the second evidentiary hearing regarding Washington's federal habeas claims.  Washington testified at the hearing.  I granted the parties permission to file two additional affidavits each accompanied by a brief and supplemental documentary evidence.[28] |
| June 10, 2005        | The government filed a post-hearing brief discussing |

---

[26] The hearing, originally scheduled for January 7, 2005, ultimately occurred on January 18, 2005.

[27] The Notice of Board Decision of January 25, 2005 was attached to Washington's letter to this court dated February 27, 2005.

[28] In addition to the documents mentioned in this chronology, Washington has filed many pro se objections and supplemental petitions.  Those were not timely, not filed with the court's permission, not filed through appointed counsel, and do not aide the court in addressing Washington's claims.

|                | Washington's federal habeas claims. |
|----------------|-------------------------------------|
| June 13, 2005  | Washington filed a post-hearing brief in support of his federal habeas claims and attached, among other documents, the affidavit of Charles P. Mirarchi, III, Esq. |
| June 15, 2005  | The government filed the affidavit of Jude D. Conroy, Esq. to supplement the evidence presented at the evidentiary hearing for Washington's federal habeas claims. |

Between the third trial and the issuance of the R&R, Washington requested continuances which accounted for at least a month of the delay.  (R&R at 21.)  Subsequent to the issuance of the R&R, Washington has requested at least two additional continuances.  (Pa. Super. Ct. Quarter Sessions File Status Sheet 6/24/04 (continuing trial until 11/15/04); Aff. Conroy ¶ 10 (stating that on 11/15/04, Washington, through trial counsel, requested a continuance of his state court trial, stating that Washington did not want to go forward with his trial until his federal habeas matter was completed).)  In addition, Mirarchi makes the following statement in his affidavit:

> Throughout my representation of Mr. Washington, I have always known that I could request reassignment to the trial pool and another available Judge to avoid trial delays.  However, it has consistently been my trial strategy and tactic to keep the case before Judge Poserina rather than risk a chance reassignment to another Judge.

(Aff. Mirarchi ¶ 12.)


## II.  Standard of Review

_____Where a petition for a writ of habeas corpus has been referred to a magistrate judge for a Report and Recommendation, the district court "shall make a de novo determination of those portions of the report . . . to which objection is made . . . [The court] may accept, reject, or

modify, in whole or in part, the findings or recommendations of the magistrate." 28 U.S.C. §

636(b).[29]  The judge may also "receive further evidence or recommit the matter to the magistrate

judge with instructions."  Id.


## III.  Discussion

The two claims presented in Washington's amended habeas petition are (1) a Sixth

Amendment speedy trial claim, and (2) a due process speedy appeal claim.[30]  The R&R

concluded that Washington exhausted his claims, and recommended that I deny the petition as to

Washington's speedy trial claim and grant the petition as to Washington's speedy appeal claim.

Both parties have objected to the findings in the R&R.  After a review of all the evidence, I

conclude that Washington has exhausted his claims, that his right to a speedy trial has not been

violated, and that his right to a speedy appeal has been violated.


## A.  Exhaustion

In the R&R, the court concluded that Washington exhausted both his speedy trial and his

_____

[29] Other than the issues that I discuss below, I approve and adopt the conclusions in the
R&R.

[30] After filing his supplemental objections, Washington attempted to raise additional
claims, which would effectively amend his petition for habeas corpus.  A petition for habeas
corpus "may be amended or supplemented as provided in the rules of civil procedure applicable
to civil actions."  28 U.S.C. § 2242.  Rule 15(a) of the Federal Rules of Civil Procedure provides
that pleadings may be amended "by leave of court or by written consent of the adverse party; and
leave shall be freely given when justice so required."  Fed. R. Civ. P. 15(a).  In the present case,
Washington was granted leave to amend and did, in fact, amend his petition after counsel was
appointed.  He was further granted leave to file a memorandum of law in support of his amended
petition, which he did.  In addition, he had the opportunity to file objections to the R&R, which
he did.  Washington's other efforts to amend his petition will not be countenanced.

speedy appeal claims.  The R&R stated that Washington fairly presented his claims to the state

courts in his state habeas petition filed in the Supreme Court of Pennsylvania on March 12,

2002.[31]  I agree with the conclusion in the R&R.[32]  To the extent that the government's argument

regarding exhaustion is based on its argument that Washington never properly filed a notice of

appeal and that no appeal is currently pending, I will address that argument when I address

Washington's speedy appeal claim.


**B.  Washington's Right to a Speedy Trial**

Washington raised the following objections to the R&R's conclusion that there was no

speedy trial violation: first, the court used the wrong method to analyze Washington's speedy

trial claim; and second, the court did not know all of the facts relevant to Washington's speedy

---

[31] This petition alleged the violation of Washington's constitutional rights to a speedy trial, direct appeal and due process along with the violation of his state rights.  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 6.)

[32] Furthermore, the Third Circuit has recognized that exhaustion may sometimes be excused:

> [e]xhaustion . . . is not a jurisdictional matter but a matter of comity.  See Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994).  Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy.  Id.; 28 U.S.C. § 2254(b)(1)(B).  We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable."  Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986).

Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004).  Because Washington's direct appeal is pending, his judgment never became final for purposes of a PCRA petition.  42 Pa. Cons. Stat. § 9545(b)(3) (providing "a judgment becomes final at the conclusion of direct review . . . or at the expiration of time for seeking the review").  Furthermore, there has been no judgment as to the outstanding criminal charges against Washington.  Therefore, it is not clear that there was any appropriate remedy available to Washington at the state level.

trial claim.

### 1. Method of Analyzing Washington's Speedy Trial Claim

As a preliminary matter, Washington contends that in weighing the four speedy trial factors set forth in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972),[33] the court should treat the time that Washington has been waiting for a verdict as one long delay rather than looking separately at the period of time leading up to each of Washington's four trials.  The R&R appropriately treated Washington's speedy trial claim as four separate speedy trial claims.

It is not a violation of double jeopardy to have four trials under the circumstances of this case.  <u>Sattazahn v. Pennsylvania</u>, 537 U.S. 101, 109 (2003) (quoting <u>Richardson v. United States</u>, 468 U.S. 317, 324 (1984) as holding that normally "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause"); <u>see also</u> <u>United States v. Rivera</u>, 384 F.3d 49, 54-55 (3d Cir. 2004) (stating that there is ordinarily no double jeopardy if a mistrial is granted on defendant's motion, and there is no double jeopardy if a mistrial is required by manifest necessity); <u>Government of the Virgin Islands v. Smith</u>, 558 F.2d 691, 696 (3d Cir. 1977) (holding that "three successive trials for the same offense are not prohibited where the declarations of mistrial were justified by manifest necessity").  Because each retrial is legally appropriate and not a result of misconduct by the government, consolidating the periods of time leading up to each

---

[33] As explained in the R&R, the Sixth Amendment guarantees defendants the right to a speedy trial in criminal prosecutions.  U.S. Const. amend. VI.  The Supreme Court adopted a four-part balancing test to determine whether delays have violated a defendant's Sixth Amendment right to a speedy trial.  <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972).  The four factors that the court must balance are the following: (1) "the length of the delay," (2) "the reason the government assigns to justify the delay," (3) "the defendant's responsibility to assert his right," and (4) "prejudice to the defendant."  <u>Id.</u> at 530-33.

trial might inappropriately exaggerate the delay for speedy trial purposes.[34]  Therefore, it is

appropriate to evaluate Washington's speedy trial claim separately as to each trial.


## 2.  Circumstances Permitting an Evidentiary Hearing

Washington's supplemental objections also argue that some facts relevant to the speedy

trial claim were absent from the portions of the record that were available to the court when it

issued the R&R.[35]  I determined that an evidentiary hearing would be helpful to resolving those

objections.

The Antiterrorism and Effective Death Penalty Act (AEDPA) permits evidentiary

_____

[34] In a case with a slightly different factual context, the Fifth Circuit in United States v. Avalos, 541 F.2d 1100, 1109-10 (5th Cir. 1976), discussed the concerns relevant in the present case.  The court in Avalos addressed a speedy trial claim for a case in which the verdict from the first trial was set aside and a new trial was held.  The Fifth Circuit discussed the question of whether to analyze the delay from the criminal accusation to the first trial or from the criminal accusation through the second trial.  The court in that case engaged in the following reasoning:

> Were the speedy trial period uniformly extended from arrest through retrial, however, then in many cases in which a conviction was reversed the government would be barred from retrying the defendants because the resulting delay would violate the sixth amendment.

Id.  The Fifth Circuit distinguished an earlier case where the government's conduct led to the mistrial holding that in Avalos the first trial was completed and there is no allegation "that the government initiated the first trial as a dilatory tactic."  Id.  Therefore, the court in Avalos determined that it would consider only time between the government's accusation and the first trial.

[35] Washington made no objections to any of the R&R's findings as to the length of delay or reasons for delay, the first and second Barker factors.  Washington's objections merely allege the following: (a) Washington asserted his right to a speedy trial on occasions between July 1999 and November 2001 that were not included in the R&R, (Pet'r's Supplemental Objection at 4-5), and (b) Washington was prejudiced by the trial delays in ways not accounted for in the R&R. (Id. at 5-9.)

hearings on habeas review in certain circumstances.  See 28 U.S.C. § 2254(e).  While AEDPA

provides only limited circumstances in which a hearing is permitted when the petitioner "has

failed to develop the factual basis of a claim in State court proceedings," 28 U.S.C. § 2254(e)(2),

those limitations do not apply if the petitioner is not at fault for the lack of a factual record in

state court.  Williams v. Taylor, 529 U.S. 420, 431-37 (2000).  If the habeas petitioner was

"unable to develop his claim in state court despite diligent effort," § 2254(e)(2) will not bar an

evidentiary hearing in federal court.  Id. at 437.  In exercising the discretion to hold an

evidentiary hearing, "courts focus on whether a new evidentiary hearing would be meaningful, in

that a new hearing would have the potential to advance the petitioner's claim."  Campbell v.

Vaughn, 209 F.3d 280, 287 (3d Cir. 2000).

        In the case before me, Washington sought relief in the state court by filing state petitions

for habeas corpus.  Because both the Pennsylvania Superior Court and the Pennsylvania Supreme

Court denied his petitions without holding a hearing, Washington did not have the opportunity to

develop the factual basis for his speedy trial claim in those proceedings.  Furthermore,

Washington could not develop the entire factual basis for his speedy trial claim at the time he

presented his state habeas petitions because neither his third trial nor his fourth trial had been

held.  Shortly after the state courts denied Washington's state habeas petitions, Washington filed

the federal habeas petition that is currently before me.  Therefore, it cannot be said that

Washington "failed" to develop the factual basis for his claim in state court.  Based on

Washington's objections and the government's failure to provide the complete state court record

prior to the issuance of the R&R, I concluded that holding an evidentiary hearing had potential to

advance Washington's claim.

### 3. Factual Findings Pursuant to the Hearing

The evidence presented pursuant to the evidentiary hearing did not ultimately advance

Washington's claim.  In his supplemental objections, Washington contended that there were two

occasions when Mirarchi asserted Washington's speedy trial rights prior to November 8, 2001.[36]

(Pet'r's Supplemental Objection at 4.)  Washington has presented no evidence, either

documentary or testimonial, to support those allegations.  Washington also claimed that he

repeatedly and unsuccessfully requested that counsel move for dismissal based on violations of

his Sixth Amendment right to a speedy trial and his rights under state law.  (Id. at 4.)  Although

supported by the evidence,[37] this assertion is immaterial.  Hakeem v. Beyer, 990 F.2d 750, 765

(3d Cir. 1993) (declining to consider pro se correspondence with the trial court as assertion of

defendant's right to a speedy trial where defendant was represented by counsel, and holding "we

believe, if a defendant is to tip the Barker scales significantly in his favor on the factor of

assertion of the right, that, at least in cases where the accused is represented by counsel, some

_____

[36] Whether defendant asserted his right to a speedy trial is the third Barker factor that must be weighed to determine whether the defendant's Sixth Amendment speedy trial rights have been violated.  The R&R found that the first time Washington asserted his right to a speedy trial was November 8, 2001.  (R&R at 16.) Washington claimed first that in or about July 1999 Mirarchi orally motioned the trial court to release Washington on nominal bail due to violations of his Sixth Amendment right to a speedy trial and his rights under state law.  (Pet'r's Supplemental Objection at 4.)  Second, Washington claimed that some time between December 2000 and November 8, 2001, Washington filed a motion to dismiss the charges.  (Id. at 4-5.)

[37] The Pennsylvania Quarter Sessions File contains a letter dated September 15, 2002 from Washington to Mirarchi complaining about Mirarchi's failure to assert Washington's speedy trial right or push for a timely retrial.   (Pa. Super. Ct. Quarter Sessions File Letter 9/15/02.)  Washington also testified that there were occasions when he spoke with and corresponded with Mirarchi and insisted upon having a trial.  (Tr. 5/20/05 at 36.)

19

formal motion should be made to the trial court or some notice given to the prosecution").[38]

Washington's supplemental objections also disputed the conclusions in the R&R

regarding whether he was prejudiced by the delay.[39]  One of the goals that courts should consider

when analyzing the degree of prejudice to the defendant is the goal of preventing oppressive

pretrial incarceration.  Barker, 407 U.S. at 532.  There is no equivalent goal for preventing post-

trial incarceration.  According to the Third Circuit, "most of the traditional interest the speedy

trial guarantee is designed to protect 'diminish or disappear altogether once there has been a

conviction' . . . [and] 'at the post-trial stage, a defendant is incarcerated under a presumptively

valid adjudication of guilt.'"  Heiser v. Ryan, 15 F.3d 299, 305 (3d Cir. 1994).  Washington's

incarceration cannot be characterized as "pretrial" incarceration, because on December 12, 1997,

the state court released Washington on his own recognizance under Rule 1100.  (R&R at 15.)

Both parties agree that because Washington was released on his own recognizance between the

first and second trials, if Washington were to finish serving his five to ten year sentence or if that

---

[38] The parties produced some additional evidence of Washington asserting his right to a speedy trial not addressed by Washington in his objections, but this evidence consisted of a pro se motion received by the court before the first trial while Washington was represented by counsel, and pro se correspondence to judges before the third trial while Washington was represented by counsel.  These are not sufficient to demonstrate that Washington asserted his right.  See Hakeem, 990 F.2d at 765 (3d Cir. 1993).  Furthermore, this evidence is offset by new evidence that Washington has sought to delay his trial.  On June 24, 2004 and November 15, 2004, Washington requested continuances in state court based in part on his desire to await resolution of his federal habeas matter.  In addition, Mirarchi knew he could request reassignment to another judge to avoid trial delays, but he chose to keep the trial before the same judge.  These recent efforts to delay trial weigh strongly against finding that he asserted his right.  Id.  (holding that "[r]epeated assertions of the right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial") (citation omitted).

[39] In weighing the fourth Barker factor, prejudice to the defendant, the R&R concluded that the fourth factor did not weigh in Washington's favor.

sentence were vacated, Washington would be released from custody.  (Tr. 5/20/05 at 52.)
Therefore, Washington's assertions of prejudice due to incarceration will not be given as much
weight as assertions of prejudice due to pretrial incarceration.

     Washington's first argument as to prejudice was that his personal losses were factors that
should be considered in determining whether he was prejudiced by the delay.  (Pet'r's
Supplemental Objection at 8.)  Washington has presented no evidence of his personal losses, so I
cannot include such losses in my analysis.

     Second, Washington claims that the death of a witness and loss of the 911 tape impaired
his defense at the December 1998 and February 2003 trials.  (Pet'r's Supplemental Objections at
7.)  Washington has presented no evidence regarding the death of the witness.[40]  The only
evidence relating to the 911 tape is the transcript of a hearing before the state court in which the
prosecution asserted that a 911 tape was introduced into evidence in the first trial, but that tape
disappeared between the first and second trial, so a transcript of the tape was entered into
evidence in Washington's second trial.  (Tr. 2/6/03 at 5.)  The defense did not object to that
assertion.  (Id.)  There is no evidence that would support a conclusion that this prejudiced
Washington.

     Lastly, Washington presented evidence that the trial delays have prejudiced him by
preventing him from being granted parole.[41]  The Parole Board "has broad discretion in parole

---

[40] The government stated that the witness "died of a heart attack on October 8, 1995,
more than two months before the Commonwealth was able to take petitioner into custody,"
(Resp. Pet'r's Objections to R&R at 7), which may explain Washington's decision to forego
presenting evidence as to that claim.

[41] The Board of Probation and Parole issued the following decision after interviewing
Washington and reviewing his file: "A DECISION IN YOUR CASE IS PENDING:

matters." <u>Finnegan v. Pennsylvania Board of Probation and Parole</u>, 838 A.2d 684, 687 (Pa.

2003).  The Parole Board weighs many factors in a hearing including "the nature and character of

the offense committed, any recommendation by the trial judge and the District Attorney, the

general character and history of the prisoner and testimony or statements by the victim and the

victim's family." <u>Rogers v. Pennsylvania Board of Probation and Parole</u>, 724 A.2d 319, 321 (Pa.

1999).  Furthermore, prisoners do not have a liberty interest in parole, which "is a matter of grace

and mercy shown to a prisoner who has demonstrated to the Parole Board's satisfaction his future

ability to function as a law-abiding member of society upon release before the expiration of the

prisoner's maximum sentence." <u>Id.</u> at 322-23.  Nonetheless, in examining whether a petitioner

has been prejudiced by a speedy trial delay, "the possible impact impending charges may have on

prospects for parole and meaningful rehabilitation should not be overlooked." <u>Burkett</u>, 951 F.2d

1431, 1442 (3d Cir. 1991) (citing <u>Moore v. Arizona</u>, 414 U.S. 25 (1973)).

      The language of the Board of Probation and Parole indicates that Washington's criminal

charges had an impact on their decision, therefore, this evidence demonstrates some prejudice to

Washington.  In the months in which the Board of Probation and Parole issued notices of

decision as to Washington's status, more than half of the parole and reparole decisions granted

parole.[42]  Because Washington was not eligible for parole until he served his minimum sentence,

---

DISPOSITION OF CRIMINAL CHARGES - PHILA MURDER, VUFA PENDING
CHARGES."  (Notice of Board Decision 6/11/04.)  On January 25, 2005, the Board of Probation
and Parole reaffirmed their June 11, 2004 decision to postpone the decision as to whether to
grant parole.  (Notices of Board Decision 6/11/04 and 1/25/05.)

    [42] In June 2004, 62% of 1,656 parole and reparole decisions granted parole.
Commonwealth of Pennsylvania Board of Probation and Parole Monthly Program Report June
2004, Table 8.  In January 2005, 56% of 1,509 parole and reparole decisions granted parole.
Commonwealth of Pennsylvania Board of Probation and Parole Monthly Program Report

Pa. Stat. Ann., tit. 61, § 331.21(a), the delay in trying him did not prejudice his parole status until February 19, 2004 when he had served his five-year minimum sentence, and possibly not until the Board of Probation and Parole's first decision on June 11, 2004.

Looking at the period of time from February 21, 2003 when Washington's third trial ended in a hung jury until the present, I conclude that there was no violation of Washington's Sixth Amendment right to a speedy trial.[43]  The slight prejudice that accrued in the most recent fifteen to nineteen months regarding Washington's parole status is outweighed by the fact that Washington's own requests prevented his fourth trial from beginning during that period of time.[44]

Therefore, even after receiving evidence pursuant to an evidentiary hearing, I reach the same conclusion as the R&R that Washington's right to a speedy trial has not been violated.

## C.  Washington's Right to a Speedy Appeal

In its objections to the R&R,[45] the government argued that Washington had, in fact, never

_____

January 2005, Table 8.  These reports are available on the Pennsylvania Board of Probation and Parole website at http://www.pbpp.state.pa.us.

[43] The R&R, looking only at the period of time from February 21, 2003 to June 21, 2004, concluded Washington's right to a speedy trial was not violated during that period of delay. (R&R at 20-22.)  Both decisions by the Board of Probation and Parole were made after the issuance of the R&R, and Washington requested additional continuances after the issuance of the R&R.

[44] Due to Washington's request on June 24, 2004, state court proceedings were continued until November 15, 2004.  Then on November 15, 2004, Washington again requested a continuance of his state court trial, because he did not want to go forward with his trial until his federal habeas matter was completed.

[45] The R&R concluded that Washington's due process right to a speedy appeal had been violated.  The court concluded that Washington has been serving his sentence since February 1999 without being heard by the state court as to his direct appeal.

filed an effective notice of appeal and, therefore, no appeal is currently pending.  Subsequently, in the government's response to petitioner's objections, the government argued that Washington's appeal was withdrawn, and, therefore, no appeal is currently pending.  Each of these arguments, if true, would have consequences as to the timeliness of Washington's federal habeas petition and the question of exhaustion.  However, I reject both arguments.

**1.  The Government's First Argument: No Effective Notice of Appeal**

Until April 26, 2004, the parties represented to the court that the petitioner's appeal had not proceeded any further because, under Pennsylvania law, the petitioner could not appeal until all of the pending charges were resolved by a verdict.  (Resp't's Objections at 3-4.)  In their objections to the R&R, the government argued for the first time that Washington's notice of appeal was rejected by the state court because it was filed while Washington's post-sentence motion was pending.  (Id. at 4.)  The government indicated that Washington filed his post-verdict motion pro se and that his attorney filed the notice of appeal, not knowing that Washington had filed a post-sentence motion.  (Id. at 5.)  The government argued that the Pennsylvania Superior Court had no jurisdiction to hear an appeal filed while a post-sentence motion was pending.[46] (Id. at 9-12 (citing Pa. R. Crim. P. 1410(A) reenacted as Rule 720) (other citations omitted).)

Because the government has since argued that the appeal was withdrawn, the government has apparently abandoned the argument in its objection that the appeal was not effectively filed. However, even if the government has not abandoned the argument in its objection, that argument

---

[46] The Pennsylvania Superior Court has never stated that it lacked jurisdiction to hear Washington's appeal.

is without merit.  The state court record indicates that the court accepted Washington's notice of

appeal.[47]  While the government contends that the state court could not possibly have accepted

Washington's appeal because Washington's post-sentence motion was pending, it is equally

likely that the court did not consider Washington's pro se post-sentence motion to be pending

because Washington did not have the authority to file pro se motions while represented by

counsel.  Commonwealth v. Pursell, 724 A.2d 293, 301-02 (Pa. 1999) (approving earlier

holdings that criminal defendants may not file pro se briefs while represented by counsel at trial

or on appeal, and extending those holdings to PCRA proceedings).  If the state court did not

consider Washington's pro se post-sentence motion to be pending at the time that counsel for

Washington filed his notice of appeal,[48] then the state court had jurisdiction to accept

---

[47] A stamp on the notice of appeal indicated that it was "Received Accepted For Review Only."  (Post Hr'g Mem. Supp. Pet'r's Mot. Ex. 3.)  There is no record of the state court rejecting Washington's appeal.  In fact, the Court of Common Pleas wrote to Washington ordering a concise statement of matters complained of on the appeal pursuant to Rule 1925(b) Rules of Appellate Procedure.  In that order, the court wrote, "Upon receipt of your reply to this order, I will write my Opinion forthwith."  (Pa. Super Ct. Quarter Sessions File Letter 3/15/99.)  An order issued just over a month later listed some of the Washington's procedural history and included the statements "On 3/5/99, Appeal to Pennsylvania Superior Court accepted for review only" and " On 3/15/99, Order for a 1925(b) to be filed."  (Pa. Super Ct. Quarter Sessions File Order 4/30/99.)  The absence of a date of dismissal suggests that at the time the order was issued on April 30, 1999, the appeal was still pending.  Furthermore, Mirarchi states in his affidavit that the appeal has never been dismissed and that the state court told Mirarchi "that an appeal on a partial verdict could not be prosecuted."  (Aff. Mirarchi ¶ 7.)

At the evidentiary hearing, the government stated its belief that the state court stamped "Received Accepted For Review Only" on documents when there was a potential jurisdictional problem.  (Tr. 5/20/05 at 18-19.)  Because the state court never rejected the notice of appeal for lack of jurisdiction or otherwise, this does not advance the government's argument.  The due process speedy appeal violation would be equally egregious if the state court accepted the notice of appeal for the limited purpose of determining whether it had jurisdiction over the appeal and failed to make even that determination.

[48] The April 30, 1999 Order provides further support for the proposition that the state court did not consider the post-sentence motion to be pending when the notice of appeal was

Washington's notice of appeal.  Therefore, I reject the government's contention that the speedy

appeal claim is invalid based on a failure to properly file notice of appeal.

## 2.  The Government's Second Argument: Notice of Appeal Withdrawn

In the government's response to petitioner's objections, the government presented yet

another argument as to the status of Washington's appeal.  (Resp. Pet'r's Objections to R&R at 9.)

They pointed to the PCRA Opinion by the Pennsylvania Court of Common Pleas, which states,

"[t]he appeal was ultimately withdrawn."  (Id. (citing Washington, PCRA Opinion of 8/23/04 at

5).)  The government contends that the statement in the PCRA Opinion is a finding of fact that

cannot be overturned without a demonstration to the contrary by clear and convincing evidence.

(Resp. Pet'r's Objections to R&R at 16 (citing 28 U.S.C. § 2254(e)(1)).  The government further

argues that the federal proceeding must be stayed to allow the appeal of the PCRA Opinion to

proceed in state court so that the state court can resolve Washington's speedy appeal claim.  (Id.)

The PCRA Opinion's statement that the appeal was withdrawn is not a finding of fact that

requires deference.  Section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in state custody pursuant to the judgment of a
> State court, a determination of a factual issue made by a State court
> shall be presumed to be correct.  The applicant shall have the
> burden of rebutting the presumption of correctness by clear and
> convincing evidence.

28 U.S.C. § 2254(e)(1).  Section 2254(e)(1)'s presumption of correctness applies only to factual

issues that are "basic, primary or historical facts: facts 'in the sense of a recital of external events

_____

filed because that Order does omits the post-sentence motion from the procedural history it sets

forth.

and the credibility of their narrators. . . .'" Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir.

1996) (quoting Townsend v. Sain, 372 U.S. 293, 309 (1963)).  The statement that Washington's

appeal was withdrawn was not such a basic, primary or historical fact.  Baker v. Horn, — F. Supp.

2d —, No. Civ. A. 96-0037, 2005 WL 1949631, *12, 2005 U.S. Dist. LEXIS 16768, * 77 (E.D.

Pa. 2005) (holding that whether petitioner requested dismissal of his PCRA petition before the

PCRA court is not such a basic, primary or historical fact).

     Even if the presumption of correctness in section 2254(e)(1) applies to the statement that

Washington's appeal was withdrawn, I find by clear and convincing evidence that the appeal was

not withdrawn.  Under Pennsylvania law, a fact does not become of record solely by virtue of a

trial court's assertion of the "fact" in its opinion; it must be independently supported by the

record.  Baker v. Horn, 210 F. Supp. 2d 592, 627 (E.D. Pa. 2002) (citing Hatalowich v. Bednarski,

461 A.2d 1292, 1294 (Pa. Super. Ct. 1983)); see also Treu v. Harleysville Ins. Co., 662 A.2d

1106, 1108 (Pa. Super. Ct. 1995) (refusing to accept in that case a judge's assertions regarding

off-the-record conference absent record support).  Consequently, the PCRA Opinion's after-the-

fact assertion that the appeal was withdrawn does not provide record support for a finding that

Washington withdrew his appeal.  The record contains no motion to withdraw, no letter

requesting dismissal, and no transcript of a hearing in which Washington made an oral request to

withdraw the appeal.  The most recent reference to Washington's notice of appeal, the April 30,

1999 Order, makes no mention of any withdrawal.  I find by clear and convincing evidence that

Washington did not withdraw his appeal and, therefore, his appeal is still pending.  Because his

appeal is still pending, the government's arguments regarding exhaustion are without merit.

     The government also argues that I must stay the instant proceeding to allow the state court

to decide Washington's appeal of the PCRA Opinion.  Because Washington's appeal is still

pending, however, his judgment has never become final for purposes of a PCRA petition.  42 Pa.

Cons. Stat. § 9545(b)(3) (providing "a judgment becomes final at the conclusion of direct review .

. . or at the expiration of time for seeking the review").  Washington cannot file a PCRA petition

before his judgment becomes final, so the state court lacks authority to decide Washington's

PCRA petition.  42 Pa. Cons. Stat. Ann. § 9545(b) (holding that any PCRA petition "shall be filed

within one year of the date the judgment becomes final" with certain exceptions permitting a later

filing).  Therefore, I need not await the state court's decision as to Washington's appeal of his

PCRA petition.  I adopt the R&R's conclusion that Washington has remained incarcerated for

over six and a half years while his appeal has remained pending in violation of his due process

right to a speedy appeal.[49]


### 3.  The Speedy Appeal Remedy

Washington objects to the remedy recommended in the R&R and contends that the

appropriate remedy would be to reduce his sentence by the length of time that his appeal was

delayed.  The Third Circuit, pointing to the scarcity of reported cases in which a convicted

---

[49] The government's objections do not contest the R&R's balancing of factors for
Washington's speedy appeal claim, they merely argue that the notice of appeal was never
effectively filed. Washington objects to the conclusion in the R&R regarding the prejudice
Washington suffered due to the delayed appeal, but he has presented no evidence demonstrating
that he suffered any prejudice over and above the prejudice inherent in a delayed appeal.
Nonetheless, I find that the length of delay in Washington's appeal allows me to draw a small
inference of prejudice.  See Hakeem, 990 F.2d at 763-64 (citing Doggett v. United States, 505
U.S. 647 (1992) for the proposition that in speedy trial cases, the length of the delay alone will
sometimes allow the court to draw an inference of prejudice).   Even without this finding of
prejudice, however, I adopt the R&R's conclusion that Washington's right to a speedy appeal has
been violated.

defendant was released unconditionally on a writ of habeas corpus due to a post-conviction delay,[50] stated that "the habeas courts ordinarily have fashioned a remedy designed to spur the state courts to fulfilling their constitutional obligations to the defendant."  Heiser v. Ryan, 15 F.3d 299, 306 (3d Cir. 1994) (citing cases from other circuits in which the remedy provided that the writ is granted unless the state takes the action urged by the circuit court, e.g. unless the state hears appeal within 90 days).  The Second Circuit said as dicta that "[r]elease from custody is an extraordinary remedy, especially in a delay-of-appeal case where release would in effect nullify a state court conviction on grounds unrelated to the merits of the case."  Simmons v. Reynolds, 898 F.2d 865, 869 (2d Cir. 1990) quoted in Heiser, 15 F.3d at 306.

In this case, the extreme remedy of unconditional discharge is not warranted.  Rather, an appropriate remedy will "spur the state courts to fulfilling their constitutional obligations to the defendant."  Heiser, 15 F.3d at 306.  One remedy that the Third Circuit pointed to effective was an order "directing a retrial unless the appeal was decided within two and one-half months," which resulted in the state court deciding the appeal.  Id.  (citing Wheeler v. Kelly, 811 F.2d 133, 135

---

[50] The court in Heiser pointed to one case in which the Third Circuit concluded that discharge was the appropriate remedy for post-trial delay.  Heiser, 15 F.3d at 306-07.  In that case, Burkett v. Cunningham ("Burkett I"), the court found that delay in sentencing the petitioner violated both his right to a speedy trial and his right to a speedy appeal.  Burkett I, 826 F.2d 1208, 1224-25 (3d Cir. 1987) (holding that "[a]lthough the delay . . . violates the Sixth Amendment speedy trial guarantee and by itself justifies discharge, the delay in sentencing also prohibits Burkett from pursuing an appeal in this case . . . [and] we find discharge the appropriate remedy for this due process violation").  In a later case, the Third Circuit distinguished Burkett I for a couple of reasons including the fact that in Burkett I "the state's attorney conceded that discharge was the appropriate remedy."  Burkett v. Fulcomer, 951 F.2d 1431, 1447 (3d Cir. 1991) (holding that the appropriate remedy for the delay in that case was to reduce petitioner's sentence by the 39 months of delay chargeable to the state court).

(2d Cir. 1987)).  With that guidance,[51] I will impose a slightly modified version of the remedy recommended in the R&R.  The Writ of Habeas Corpus shall issue unless the Pennsylvania Superior Court decides Washington's direct appeal by March 13, 2006.[52]

## IV. Conclusion

Therefore, upon holding an evidentiary hearing and receiving a more complete state court record, I nonetheless reach the same conclusions that the R&R reached.  I deny Washington's petition as to his speedy trial claim, but grant it conditionally as to his speedy appeal claim.  An appropriate order follows.

---

[51] In Wheeler, the Second Circuit noted as dicta that it was questionable whether federal district courts had the authority to direct a retrial by state authorities.  Wheeler, 811 F.2d at 135.

[52] Washington may be incorrect in asserting that he would be released from prison now if I imposed the remedy used in Burkett v. Fulcomer, 951 F.2d 1431, 1447 (3d Cir. 1991).  In that case, the court did not reduce the defendant's sentence by the entire time during which the appeal was pending; rather, it reduced defendant's sentence by the amount of the delay that characterized the prejudice suffered by the defendant.  Id.  In the present case, Washington's sentence would not be reduced by the approximately six and a half years of delay; it would be reduced by some smaller amount that appropriately characterized the prejudice that Washington had suffered.

30

## ORDER

**AND NOW**, this __12th____ day of September 2005, upon consideration of the parties'

filings including petitioner's supplemental objections and respondent's objections, and after

careful review of the Report and Recommendation of United States Magistrate Judge Diane M.

Welsh, it is **ORDERED** that the Report and Recommendation (Docket #33) is **APPROVED** and

**ADOPTED** with the following modification:

1.      The petition for a writ of habeas corpus is DENIED with respect to the Sixth Amendment speedy trial claim.

2.      The petition for a writ of habeas corpus is GRANTED with respect to petitioner's due process speedy appeal claim as follows:

     The Writ of Habeas Corpus shall issue unless the Superior Court of Pennsylvania decides the petitioner's direct appeal by March 13, 2006.

3.      A Certificate of Appealability is granted.  Petitioner has made a substantial showing of the denial of his right to a speedy trial.

S/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to:

O:\ABB\Washington Mem & order.wpd